**KRAFT FOODS, INC, Plaintiff, Appellant,**

v.

**OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, AFL–CIO, CLC, LOCAL 1295, Defendant, Appellee.**

No. 99–1446.

United States Court of Appeals, First Circuit.

Heard Oct. 5, 1999.

Decided Feb. 16, 2000.

Nathan L. Kaitz, with whom Stacy L. Miller and Morgan, Brown & Joy, L.L.P., were on brief for appellant.

Robert M. Schwartz for appellee.

Before BOUDIN, STAHL, and LIPEZ, Circuit Judges.

LIPEZ, Circuit Judge.

Kraft Foods, Inc. appeals from a judgment of the district court affirming an arbitration award. The arbitrator found that Kraft had violated its collective bargaining agreement (the "Agreement") with the Office and Professional Employees International Union, AFL–CIO, CLC, Local 1295 (the "Union") by applying the Agreement's break-in wage provisions to one class of new employees while paying a second class full wages. Finding that the parties had agreed to a break-in wage provision applying to all new employees covered by the Agreement, the arbitrator ordered back pay to the workers who had received break-in wages so that all workers would enjoy full wages during the period in which Kraft was in breach. Kraft filed a suit in district court under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, arguing, inter alia, that the remedy exceeded the arbitrator's authority. On cross-motions for summary judgment, the district court rejected this claim and affirmed the arbitrator's judgment. We now do the same.

## I.

We state the facts as the arbitrator found them. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Dur-

ing negotiations for the 1996–1999 collective bargaining agreement, Kraft proposed break-in wage rates that would apply only to newly hired production employees. Although the Union objected, it eventually accepted break-in rates that would apply to all newly hired employees rather than just production workers. Article 10 of the Agreement reflected this understanding, providing that "[n]ew employees hired after May 21, 1996 shall be paid at the rate of eighty percent (80%) of the job rate in the classification in which the employee is working for the first six (6) months, ninety percent (90%) of the job rate for the second six months."

In October, 1997, the Union learned that Kraft had hired maintenance and power plant employees (the "crafts employees") at standard wage rates rather than the break-in rates provided for in the Agreement. However, all new production employees were paid the break-in wages. The Union filed a grievance challenging the discriminatory application of the break-in wage provision. The dispute was submitted to arbitration pursuant to the Agreement. Kraft argued that it had agreed only to break-in rates for production employees; this limitation had been "inadvertently" omitted from the Agreement.

The arbitrator rejected Kraft's claim of mutual mistake, finding that "there was a meeting of the minds between the parties that the break-in rates set forth in Article 10 would apply to *all* bargaining unit employees hired after May 21, 1996." (emphasis in original). The arbitrator also concluded that he could not reform the Agreement as Kraft proposed because Article 43 gave the arbitrator "no authority to amend, alter or modify this Agreement or its terms." The arbitrator therefore found Kraft in breach and ordered it to apply the break-in wage provision evenly until the Agreement terminated in 1999.

The more difficult question related to an appropriate remedy for the past discrimination. The arbitrator found that there were only two plausible methods of remedying Kraft's unequal application of the break-in wages. He could order the crafts workers to remit the wages paid to them in violation of the Agreement, a remedy that he characterized as "patently unfair" and one that Kraft and the Union opposed. Or he could order back pay to the production workers to make up for the compensation they lost when Kraft "discriminated against them by applying the break-in rates to them but not to other newly hired [crafts] employees." The arbitrator found that this alternative provided "reasonable and equitable" compensation for Kraft's breach. On appeal, Kraft does not challenge the arbitrator's finding that it breached the Agreement. Rather, it argues that the back-pay remedy exceeded the arbitrator's authority.

## II.

The general principles that we must apply are familiar. Our review of labor arbitral decisions is extremely narrow and "extraordinarily deferential." *Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica Local 610*, 959 F.2d 2, 3–4 (1st Cir.1992). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Misco*, 484 U.S. at 37–38, 108 S.Ct. 364. The arbitrator cannot, of course, ignore the contract and simply dispense "his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Rather, the arbitrator's decision must "draw[ ] its essence" from the agreement. *Id.* Provided that the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority," a court may not disturb his judgment even if it is "convinced he committed serious error." *Misco*, 484 U.S. at 38, 108 S.Ct. 364; *see also Advest Inc. v.*

*McCarthy,* 914 F.2d 6, 9 (1st Cir.1990) (quoting *Misco* ).

■ Kraft argues that the arbitration clause of the Agreement denied the arbitrator the power to order the back-pay remedy. Because "[t]he extent of an arbitrator's authority lies within the language of the contract," we must carefully consider any restrictions that the Agreement imposes on the arbitrator's power. *Strathmore Paper Co. v. United Paperworkers Int'l Union,* 900 F.2d 423, 426 (1st Cir.1990). Kraft does not identify any language in the Agreement explicitly barring back-pay remedies. Rather, it points to Article 43 which states, in pertinent part, that "[t]he arbitrator shall have no authority to amend, alter, or modify this Agreement or its terms and shall limit the decision solely to the interpretation and application of this Agreement."

This standard "no-modification" clause incorporates general legal principles concerning an arbitrator's authority, "reinforc[ing] the admonition in *Misco* that legitimate arbitral awards draw their essence from the contract." *LaRocque v. R.W.F., Inc.,* 8 F.3d 95, 97–98 (1st Cir. 1993) (internal citations and quotation marks omitted). Thus the clause reminds arbitrators that their duty is to interpret and apply the agreement as negotiated, and that they may not reform the contract to do "industrial justice." *Misco,* 484 U.S. at 30, 108 S.Ct. 364. The arbitrator here was aware of this limitation on his authority, noting in his written decision that while he was "not unsympathetic to the Company's plight," Article 43 prevented him from reforming the break-in wage provision as Kraft advocated, and that Kraft would have to "live with that bargain for the duration" of the Agreement.

While courts disagree on the extent to which a "no-modification" clause bars arbitrators from looking beyond the language of the agreement to determine breach,[1] courts agree that "the fashioning of an appropriate remedy is not an addition to the obligations imposed by the contract." *Tobacco Workers Int'l. Union, Local 317 v. Lorillard Corp.,* 448 F.2d 949, 956 (4th Cir.1971). In *United Steelworkers of America v. United States Gypsum Co.,* 492 F.2d 713, 718 (5th Cir.1974), the employer violated the agreement's requirement that it negotiate a wage increase with the union. As the union was defunct at the time of arbitration, the arbitrator ordered the employer to pay a wage increase based on what it calculated the negotiation would have produced. *See id.* at 728–29. Although the agreement included a standard "no-modification" clause, the court held that the salary increase the arbitrator ordered did not "add[ ] terms to the contract. In the context present here his action merely represent[ed] an attempt to make the union whole for the damage suffered as a result of Gypsum's breach of the collective bargaining agreement." *Id.* at 730. Likewise, in *Local 879, Allied Industrial Workers of America v. Chrysler Marine Corp.,* 819 F.2d 786, 788 (7th Cir. 1987), the arbitrator imposed a severance plan not provided for under the contract to

1. Courts are split on whether these clauses limit an arbitrator's powers of contract construction to a greater extent than the background law. *Compare Holly Sugar Corp. v. Distillery Union,* 412 F.2d 899, 904–905 (9th Cir.1969) (clause places no additional limits on arbitrator's powers) *with Torrington Co. v. Metal Products Workers Union,* 362 F.2d 677, 681 (2d Cir.1966) (clause limits arbitrator's powers in adding to an agreement). Even those courts taking the more restrictive view have concluded that arbitrators "may imply terms or fill gaps in an agreement." *Harry Hoffman Printing, Inc. v. Graphic Communi-* *cations Int'l Union,* 950 F.2d 95, 100 (2d Cir.1991). We have noted this dispute without taking a position. *See United Food and Commercial Workers Int'l. Union v. Stop & Shop Cos.,* 776 F.2d 19, 22 (1st Cir.1985); *c.f. Larocque,* 8 F.3d at 97 (stating that these provisions reinforce the background law). We need not resolve whether the "no-modification" clause limits an arbitrator's authority in construing an agreement beyond the background law because Kraft accepts the arbitrator's construction of the Agreement and determination of breach and challenges only the remedy.

compensate for Chrysler's failure to hold required negotiations prior to the plant closing. Notwithstanding the "no modification" clause, the court found that the arbitrator's power to determine breach "further implies the authority to prescribe a remedy which can be said reasonably to cure the breach." *Id.* at 789–790.

■ Kraft argues that this case is different because the arbitrator's remedy directly altered the Agreement. In Kraft's view, it was ordered to "violate the collective bargaining agreement a second time to remedy its first violation of the agreement." In a sense, Kraft is right: the arbitrator's back-pay award had the effect of eliminating the break-in wage clause entirely during the time period in which Kraft had applied it in a discriminatory fashion.[2] However, a standard "no-modification" clause does not limit remedies of this type if such a remedy is required to cure a breach and is not specifically barred by the agreement. *See Dixie Warehouse & Cartage Co. v. General Drivers, Warehousemen & Helpers, Local Union No. 89.*, 898 F.2d 507, 510–511 (6th Cir.1990) (no-modification clause does not limit remedial authority "[i]n the absence of a contractual provision that expressly limits or removes" such authority). When parties wish to curb an arbitrator's remedial authority, they can draft a contract that specifically excludes certain remedies (such as back-pay) or limits these remedies to particular situations. *See, e.g. Resilient Floor & Decorative Covering Workers, Local Union 1179 v. Welco Mfg. Co.*, 542 F.2d 1029, 1031 (8th Cir.1976) (empowering clause barred arbitrator from awarding "money damages except back pay in case of wrongful discharge"). Likewise, the parties can choose to provide pre-negotiated, exclusive remedies for a particular breach which the arbitrator may not disturb. *See, e.g. S.D. Warren Co. v. United Paperworkers Int'l Union*, 845 F.2d 3, 8

(1st Cir.1988) (arbitrator could not impose his own remedy for disciplinary violation when agreement itself provided disciplinary penalties); *Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 946 (1st Cir.1988) (same).

■ Where, as here, the agreement neither requires nor bars particular remedies, the arbitrator's discretion "is at its zenith." *Advest*, 914 F.2d at 11; *see also S.D. Warren*, 845 F.2d at 8 ("[I]f the parties do not pre-negotiate remedies, the arbitrator can fashion them as part of his decisional discretion."). When such explicit restrictions are absent, we must be mindful of the Supreme Court's admonition that broad remedial authority is required to give arbitrators "flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358. If the violation ordered by the arbitrator is designed to correct a prior breach by the offending party, the remedy must be upheld so long as it "draws its essence" from the agreement. *Id.; see also Local 1445, United Food & Commercial Workers Int'l Union v. Stop & Shop Cos.*, 776 F.2d 19, 22 (1st Cir.1985)("Arbitrators are not required to follow principles of contract law or judicial precedent. The arbitrator's decision must be simply in the realm of what a judge might decide.") (internal citation omitted).

The remedy in this case meets this standard. To redress the discriminatory treatment caused by Kraft's breach, the arbitrator had to choose between the unpalatable pay-back approach or one that ordered Kraft to provide back pay to the production workers. While the arbitrator's decision to order back pay effectively nullified the break-in wage provision during the period of breach, this result is

---

**2.** We note, however, that the arbitrator did not modify the agreement prospectively. Rather, he ruled that Kraft would have to

honor the break-in wage provision as written until the agreement terminated.

consistent with the intent of the original bargain between Kraft and the Union. The Union had accepted only a break-in wage provision that would apply to all workers, rejecting Kraft's initial proposal of break-in wages exclusively for production workers. Forcing Kraft to abandon break-in wages for production workers during the period in which it improperly abandoned break-in wages for crafts workers fulfilled the equality principle embodied in Article 10. The remedy, while forcing Kraft to ignore a contractual provision, prevented Kraft from unilaterally adopting the more limited break-in wage provision that the Union had rejected. As this remedy "draws its essence" from the Agreement, we will not disturb it. *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. 1358.

*Affirmed*