# United States Court of Appeals
## For the First Circuit

No. 04-2256

AIRLINE PILOTS ASSOCIATION, INTERNATIONAL,

Plaintiff, Appellee,

v.

PAN AMERICAN AIRWAYS CORPORATION,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. James R. Muirhead, U.S. Magistrate Judge]

Before

Lipez, Circuit Judge,

Stahl, Senior Circuit Judge,

and Oberdorfer,[*] Senior District Judge.

John T. Alexander with whom R. Matthew Cairns and Ransmeier & Spellman P.C. were on brief for appellant.
Suzanne L. Kalfus with whom Jerry D. Anker, Andrew W. Serell and Rath, Young & Pignatelli were on brief for appellee.

April 19, 2005

[*]    Of the District of the District of Columbia, sitting by designation.

**OBERDORFER, <u>Senior District Judge</u>**. This is an appeal from a district court decision enforcing an arbitration award. The Airline Pilots Association, International (the "Association" or "ALPA") petitioned the district court to enforce an award on behalf of Shahir Selim against Pan American Airways Corporation ("Pan Am"). The district court granted that petition in full. We now affirm in part and reverse in part, with directions that the district court remand to the original arbitration panel for clarification of the award.

## I.  BACKGROUND

Shahir Selim is an airline pilot. He worked for Pan Am under a collective bargaining agreement (the "Agreement" or "CBA"). The Association is the collective bargaining representative for the pilots employed by Pan Am.

The Agreement provides for unresolved grievances arising under it to be submitted to binding arbitration before the Pan Am Airway Pilots' System Board of Adjustment (the "Board"). Grievances are heard by panels comprised of representatives of Pan Am and the Association, along with one neutral arbitrator.

Between August and October 2001, Selim filed five grievances against Pan Am. Only two are relevant here:

- <u>Failure to Promote</u>. Selim was a Flight Engineer when he began working for Pan Am in 1999. He submitted a permanent bid to

-2-

be upgraded to First Officer or, preferably, Captain. He became a First Officer in January 2000. In March 2000, Pan Am promoted to Captain a pilot with less seniority than Selim without giving him a chance to train for and be upgraded to Captain upon completion of the required training. On August 28, 2001, Selim grieved the Company's failure to promote him.

• <u>Improper Discharge</u>. On October 5, 2001, while Selim was preparing to board a Pan Am flight as a passenger, he took issue with instructions from flight personnel that he check baggage that he thought he could carry on. Pan Am fired Selim on October 29, 2001 based on that incident. Selim filed a grievance challenging his termination.

When the parties could not resolve Selim's grievances, the Association pursued arbitration before the Board. A three-member Board panel held hearings on all five grievances in May and June 2002. It issued its decision and award (the "Arbitration Decision" and "Award") on November 7, 2002.

Meanwhile, according to Pan Am, economic difficulties forced it to institute a system-wide furlough of its pilots, beginning in September 2002. Pan Am claims that a pilot with

-3-

Selim's seniority would have been placed on unpaid furlough on September 12, 2002.[1]

The Association claims Pan Am never notified Selim (before or after the Board decision) that he was being furloughed, as required by the Agreement. According to the Association, this failure to notify Selim prevented him from grieving the furlough if he had thought it improper. The Association also claims that if Selim had been furloughed, rather than discharged, he would have been entitled to benefits he did not receive. It notes that there may be other factual issues or problems with Pan Am's claim that Selim would have been furloughed on the specified dates.

On May 28, 2003, Pan Am sent Selim a letter notifying him that he was "hereby recalled from furlough status and directed to report for active employment," effective June 23, 2003. Selim returned to work as directed. Meanwhile, the Association maintained, and it has continued to maintain, that he was never in fact furloughed.

---

[1] Pan Am's allegations regarding the furlough are contained in an affidavit it submitted in district court in opposition to the Association's summary judgment motion. See infra pp. 6 and 20-21. The Association does not deny that the system-wide furlough occurred, nor that Selim would have been subject to it (in accordance with his seniority) if he had not previously been fired. As discussed below, there is some question as to whether Pan Am properly introduced the facts regarding the furlough. We nonetheless recite these facts here for background.

A.    **The Arbitration Decision and Award**

In the November 2002 Arbitration Decision, the Board resolved four grievances in Selim's favor[2] and one against him.[3] The Award concluded with a "Note" (by the neutral arbitrator) stating:  "Concerning all of the above awards, I shall retain jurisdiction to resolve any financial matters if the parties are unable to agree."

As to the grievances relevant on appeal:

1.    Failure to Promote.  The Board found that Pan Am should have chosen Selim for Captain training in March 2000.  It held that Pan Am's failure to give him the opportunity to complete this training represented a continuing violation of his seniority rights.  Because Selim had not filed his grievance until August 28, 2001, the Board was "reluctant to grant back pay for one and one-half years since no official complaint had been made."  The Award therefore provided:

> The Company shall retroactively recompute the Grievant's wage scale to that of Captain effective August 28, 2001 and he shall be selected for Captain's training for the next upgrade to Captain. . . .

---

[2]    The four grievances resolved in Selim's favor involved: (1) reimbursement of moving expenses; (2) unreasonably keeping Selim out of service for medical reasons despite his having passed two physicals; (3) failing to give him the chance for promotion to Captain in accord with his seniority; and (4) his discharge.

[3]    This grievance involved reimbursement of travel expenses.

-5-

2. <u>Improper Discharge.</u>  The Board found that, in the incident for which he was fired, Selim had "resisted a reasonable instruction to check his flight bag."  The Board determined that this conduct, while "serious," was not as egregious as Pan Am alleged.  It noted that "Grievant had never been warned, disciplined, or even counseled about his conduct" previously.  The Board held that his conduct did "not justify discharge for a first offense."  It "reduced [the discharge] to a 90 day suspension." The Award provided:

> The termination of the Grievant is set aside. He shall be reimbursed to service with retention of seniority and other benefits, but he shall receive a 90 day suspension.

## B.  **Proceedings in the District Court**

In April 2003, the Association filed this lawsuit to enforce the Award.  Pan Am had not then complied with any of the Award's requirements, despite several demand letters from the Association.

On March 15, 2004, the Association filed a motion for summary judgment supported by a statement of material facts not in dispute. Pan Am responded with an "Objection" to the motion.  In both its Objection and its supporting memorandum of law, Pan Am maintained that "there are genuine issues of material fact" precluding summary judgment.  Pan Am bolstered this claim with specific citations to supporting affidavits.  It did not, however,

support its legal memorandum with a separate statement of the material facts that it claimed were in dispute.

Pan Am argued, <u>inter alia</u>, that: (1) the award of Captain's pay to Selim was improper because the Agreement allowed only those who had completed Captain's training to be paid at that rate, and Selim had not done so; and (2) any back pay award should not include pay for the time Selim would have been on furlough if he had not been discharged.

On June 22, 2004, the district court granted the summary judgment motion in full. The district court adopted the Association's statement of facts. It deemed those facts admitted pursuant to Rule 7.2 of the Local Rules of the District of New Hampshire because Pan Am "did not include a statement of material facts as to which it contends a genuine dispute exists."

The district court rejected Pan Am's argument that the retroactive award of Captain's pay to Selim, prior to his completion of training, was inconsistent with the Agreement and therefore exceeded the Board's authority. The court focused on arbitrators' broad discretion in shaping remedies:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

(citing <u>United Steelworkers of Am.</u> v. <u>Enter. Wheel & Car Corp.</u>, 363 U.S. 593, 597 (1960)).  Recognizing that the Agreement did not provide "specific remedies . . . for breach of contract," the court held that the "arbitrators had discretion to formulate an award to effectuate the purposes of the agreement."

The district court also rejected Pan Am's argument that Selim should not receive back pay for the period from September 11, 2002 through June 23, 2003, when he allegedly would have been on unpaid furlough if he had been reinstated on January 13, 2002, when the 90-day suspension authorized by the Award expired.  The district court refused to consider Pan Am's claim that the back pay award should be understood not to include pay for that nine-month furlough period.  The court explained that this "partial defense to payment" was "not raised before the arbitrators" nor in Pan Am's answer or discovery plan.  It held that:

> Defendant could have, and should have, raised this matter before the Board either before the Award or shortly thereafter.  It is <u>beyond the jurisdiction of this court to change the Award, that is, to address the merits.</u>  The award is enforced as issued and plaintiff is to be paid effective as of January 13, 2002.

(Emphasis added.)

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment de novo. Boston & Maine Corp. v. Bhd. of Maint. of Way Employees, 94 F.3d 15, 17 (1st Cir. 1996).

In reviewing a decision enforcing an arbitration award, we give great deference to the arbitration process, as we expect the district court to do. Id. at 18-19. Indeed, court review of arbitral decisions is "extremely narrow and exceedingly deferential." Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000) (internal quotation omitted). Courts should "vacate an arbitral award only in rare circumstances, such as when there was misconduct by the arbitrator, when the arbitrator exceeded the scope of her authority, or when the award was made in manifest disregard of the law." JCI Communications v. Int'l Bhd. of Elec. Workers, 324 F.3d 42, 48 (1st Cir. 2003).

### B. Failure to Promote

Pan Am argues that the Board "cannot have . . . intended" to award Selim Captain's pay prior to his completion of Captain's training because that "would be contrary to several CBA provisions." Therefore, Pan Am claims, the Award is ambiguous and this issue should be remanded to the Board for reconsideration.

The Award provides that the "Company shall retroactively recompute the Grievant's wage scale to that of Captain effective

-9-

August 28, 2001." (Emphasis added.) There is nothing ambiguous about this directive.

The Award further provides that Selim "shall be selected for Captain's training for the next upgrade to Captain." The simultaneous award of a retroactive raise and provision for future training confirms the Board's awareness that Selim would receive Captain's pay before completing that training. Moreover, the Board acknowledged that "Grievant would have to successfully complete that training before he could actually serve as a Captain . . . ." There is no reason to believe the Board did not mean what it said, and so no reason to send the promotion issue back to the Board.

Pan Am's argument therefore reduces to the claim that the Board exceeded its authority by crafting a remedy that is inconsistent with the Agreement. Pan Am points to the provision in the Agreement that a "pilot may not be promoted based on seniority unless he [h]as met the basic Company qualifications . . . ." CBA Section 22(D)(3). It also cites to the provision that a pilot's pay is to be "based on his status and longevity with the Company." CBA Section 3 (emphasis added). Pan Am further notes that a pilot promoted to Captain receives a raise only after "successful completion" of training, and the raise is retroactive only to the date training began. CBA Section 24(F).

According to Pan Am, these provisions preclude paying anyone who has not qualified to serve as a Captain at the Captain's

-10-

rate.  Pan Am points out that the Board's "jurisdiction shall not extend to changes in . . . rates of compensation" covered by the Agreement.  CBA § 21(C)(1).  Therefore, Pan Am argues, the Board exceeded its jurisdiction by requiring payment to Selim at a rate to which he was not entitled under the Agreement.

The district court was right to reject this argument. "[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).  The Supreme Court has recognized that in "formulating remedies," arbitrators must have "flexibility in meeting a wide variety of situations."  Enter. Wheel, 363 U.S. at 597.  Courts must not "review the merits of an arbitration award."  Id. at 596.

Nothing in the Agreement establishes the appropriate remedy for a violation such as the one found here.  It is unquestionably within the Board's jurisdiction to interpret the Agreement as needed to resolve grievances and to determine appropriate remedies for any violation of it.  "Where, as here, the agreement neither requires nor bars particular remedies, the arbitrator's discretion is at its zenith."  Kraft Foods, Inc. v. Office & Prof'l Employees Int'l Union, 203 F.3d 98, 102 (1st Cir. 2000) (internal quotation omitted).  The Board had discretion to

determine that Selim ought not be penalized for Pan Am's failure to provide him the opportunity to train for and become a Captain.

Pan Am also argues that the Board exceeded its jurisdiction by "chang[ing]" "rates of compensation" under the collective bargaining agreement. See CBA § 21(C)(1). On the contrary, however, the Board did not change the rates of pay provided for under the Agreement. Instead, it determined what damages Selim had suffered as a result of Pan Am's breach of contract and crafted a remedy to compensate him for those damages. There is nothing extraordinary or problematic about such a remedy. Cf. Kraft Foods, 203 F.3d at 101-02 (clause barring arbitrator from modifying collective bargaining agreement does not prevent arbitrator from crafting appropriate remedy to cure breach).

Pan Am argues that the Award improperly placed Selim in a position "that he had no right to be in" without having successfully qualified for it. The lone case it cites for this merely affirms a decision by a district court (as distinguished from an arbitrator) denying back pay in a particular case. Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc., 822 F.2d 188, 192-93 (1st Cir. 1987) (approving denial of back pay where plaintiff neither asked for a chance to pass the test the employer denied him nor provided any evidence he would have passed it). Cabarga does not hold, or even suggest, that back pay is never an acceptable remedy when an employer's actions prevented an employee from

satisfying some prerequisite to the position in question, much less that it is an unacceptable remedy in an arbitration. The case is simply inapplicable here, as we do not review the merits of an arbitrator's decision. The question of whether this is an appropriate or fair remedy goes directly to the merits -- and is thus well within the Board's discretion.

### C. Improper Discharge

The Board reduced Selim's discharge to a 90-day suspension. The Award provided that Selim "shall be reimbursed to service with retention of seniority and other benefits" following his suspension. The suspension period expired January 13, 2002.

The parties agree that this means Selim was to be reinstated with back pay as of January 13, 2002. They disagree as to what that means with respect to the 9-month period (from September 12, 2002 through June 23, 2003) during which Pan Am claims Selim would have been on furlough along with all other pilots of his seniority.

The district court refused to consider this argument. It held that "Defendant could have, and should have, raised this matter <u>before the Board</u> either before the Award or shortly thereafter." (Emphasis added.) The court stated that it was beyond its jurisdiction "to <u>change</u> the Award, that is, to address the merits. The Award <u>is enforced as issued</u> . . . ." (Emphasis added.)

-13-

In reviewing this holding, we distinguish between two questions -- one substantive, one procedural -- that the district court did not address separately. First, what does the Award mean? Does it require payment for the hypothetical furlough period, or is it ambiguous? Second, it is a separate question whether, if the Award is ambiguous, Pan Am has forfeited its right to pursue its interpretation of the Award.

We must determine whether each of these questions is for the arbitrator or the court in the first instance.

1.   What the Award Means

Implicit in the district court's holding that it could not "change" the Award is the assumption that the Award "as issued" meant what the Association said the Award meant. Though claiming to avoid the issue of what the Award required, the court simply adopted, without analysis or justification, the Association's reading of it. That is, the holding assumes that the Award in fact requires back pay for all days after January 13, 2002, and not just those days that Selim would have been paid absent his wrongful termination.

We find that Pan Am has raised a legitimate question as to how the Award should be interpreted. The Award is naturally silent as to how a furlough period should be treated, since that issue was never raised before the Board. The Board's only statement -- that Selim should "be reimbursed to service with

-14-

retention of seniority" -- does not directly mention back pay, much less address how it is to be calculated, in light of the hypothetical furlough period or otherwise.

While the Board's opinion establishes that the award for back pay is to begin 90 days after Selim's wrongful termination (i.e., January 13, 2002), this need not mean that he is entitled to be paid from that day forward, without regard to any changes in circumstance or relevant external factors. Pan Am points out that the Board approved disciplining Selim for his conduct (albeit less harshly than it had originally done). Pan Am thus argues that it is unreasonable to think the Board intended Selim to receive more than he would have received had he never been fired, as would happen here if he is paid for the hypothetical furlough period.

Instead, Pan Am argues that the back pay remedy should be interpreted as a traditional "make-whole" remedy. It points to the Agreement's provision that a pilot who has wrongly been held out of service shall "be reinstated without loss of seniority, and shall be paid for such time lost in an amount which he normally would have earned had he been continued in service during such period." CBA Section 19(E)(1) (emphasis added). According to Pan Am, the Board's Award should be understood as consistent with this remedial provision. The "clear intent," Pan Am says, "is for a wrongfully-discharged employee to be reinstated and reimbursed so as to put him in the position he would have been in *if the termination had*

*not taken place.*"  Here, Pan Am says, that cannot be accomplished by paying Selim for a nine-month period when all other pilots of his seniority level were on unpaid furlough.

Pan Am's construction of the Award is sufficiently plausible for us to find the Award ambiguous with respect to how back pay should be calculated in light of the furlough.  Given this, Pan Am's interpretation -- that back pay should be calculated so as to put Selim in the position he would have been but for the unlawful discharge -- is not inconsistent with the Award or otherwise unreasonable.  Cf. Roman v. Maietta Constr., Inc., 147 F.3d 71, 76-77 (1st Cir. 1998) (upholding deduction of compensatory time from back pay award even though deduction was not statutorily authorized; calculation was "fair and permissible," and "plaintiffs are entitled to be made whole, not to a windfall"); E. Me. Med. Ctr. v. NLRB, 658 F.2d 1, 11 (1st Cir. 1981) ("caution[ing] the Board to exercise care in calculating back pay to include only those amounts that would have been granted but for the hospital's unlawful conduct").  We therefore reject the district court's conclusion that enforcing the Award "as issued" requires adopting the Association's interpretation of it.

2.  Procedural Objections to Clarification of the Award

Ordinarily, a dispute as to how to interpret an arbitral award such as the present one should be remanded to, and resolved by, the Board that issued it.  Although the parties do not mention

-16-

it, the Railway Labor Act[4] <u>requires</u> arbitration agreements between airlines and their employees to "provide that any difference arising as to the meaning, or the application of the provisions, of an award made by a board of arbitration <u>shall be referred back for a ruling to the same board</u>, or, by agreement, to a subcommittee of such board."  45 U.S.C. § 158(m).

Where an attempt to "enforce" an award generates or reveals a dispute requiring interpretation of the award's scope or application, that dispute "must be referred to a reconvened board of arbitration for determination."  <u>W. Air Lines, Inc.</u> v. <u>Labor Comm'r of Div. of Labor Law Enforcement</u>, 167 F.2d 566, 567 (9th Cir. 1948) (reversing district court order enforcing arbitration award and directing remand to arbitrator for clarification of award).  <u>See</u> <u>Locals 2222, 2320-2327, Int'l Bhd. of Elec. Workers</u> v. <u>New Eng. Tel. & Tel. Co.</u>, 628 F.2d 644, 647 (1st Cir. 1980) (confirming authority of courts to resubmit arbitration award to original arbitrators for interpretation and affirming remand for that purpose); <u>see generally</u> <u>Stanton</u> v. <u>Delta Air Lines, Inc.</u>, 669 F.2d 833, 836 (1st Cir. 1982) (affirming remand for arbitration) ("The policy favoring arbitration extends with particular force to arbitration by system boards of adjustment[, which] . . . are

---

[4]     The provisions of the Railway Labor Act (with a few exceptions not relevant here) "cover every common carrier by air engaged in interstate or foreign commerce."  45 U.S.C. § 181.  The applicable provisions include those requiring and governing arbitration of employment disputes, including 45 U.S.C. §§ 157-159.

-17-

created by the Railway Labor Act for the resolution of disputes between an air carrier and its employees [and] are the mandatory, exclusive and comprehensive system for resolving grievance disputes.") (internal citations and quotations omitted).

Moreover, the Award here expressly notes the retention of "jurisdiction to resolve any financial matters if the parties are unable to agree." All this argues for remanding the question of how the Award should be interpreted to the Board.

Nonetheless, the Association argues that the district court properly found that "Pan Am's contention that Mr. Selim would have been furloughed from September 2002 to June 2003 . . . was untimely raised and therefore would not be considered." It claims that Pan Am "had an obligation to raise the matter" of whether Selim would have been on furlough "before the System Board."

Pan Am argues that "[n]othing in the Arbitration Decision or ALPA's petition put [it] on notice of a claim for the extraordinary relief of an award of back pay for unpaid furlough time." That is, since the Award is ambiguous, there is no reason to charge Pan Am with any greater reason to anticipate the Association's interpretation than the Association had to anticipate Pan Am's interpretation. Thus, Pan Am argues that the district court "penalize[d] [it] for failing to predict a highly unusual interpretation of an arbitration award."

We cannot accept the parties' invitation to enter this thicket and determine whether Pan Am's actions, or failures to act, preclude it from seeking clarification of the Award from the Board. The question of whether Pan Am has forfeited its right to have this issue arbitrated is itself properly addressed initially to the Board rather than to the federal courts.

Although it might not be apparent on the surface, at bottom the question here is a classic one of procedural arbitrability: is it for the court or the arbitrator to decide initially whether a party is foreclosed from arbitrating a particular issue, otherwise subject to arbitration? We have addressed this question in related contexts: "issues of procedural arbitrability are for the arbitrator to decide." Local 285, Serv. Employees Int'l Union v. Nonotuck Res. Assocs., Inc., 64 F.3d 735, 739 (1st Cir. 1995) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)). "Once it is determined, . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley, 376 U.S. at 557. Such issues include "whether [grievance] procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate." Id.

-19-

It is thus up to the Board to determine in the first instance here whether Pan Am, by its conduct, forfeited its right to argue that Selim was (or would have been) furloughed, or that the back pay award does not (or should not) encompass the hypothetical furlough period. These questions "grow out of the dispute and bear on its final disposition." Id. Barring Pan Am from seeking remand to the Board based on conduct that is for the Board to evaluate would interfere with the parties' agreed method of resolving their disputes, and would not reflect the deference federal courts owe arbitrators whose awards are before the courts for enforcement.

Similarly, the factual issues the Association has raised regarding whether Selim was, or would have been, on furlough for the period in question are not for the federal courts to resolve. For example, whether Pan Am was required to notify Selim of the furlough and failed to do so, whether it failed to provide him with benefits the Agreement required it to provide, and, if so, whether it should be estopped from claiming he would have been furloughed are all questions that go to the merits of the dispute and so should be addressed to the Board. That such factual disputes might exist does not foreclose us from causing the matter to be returned to the Board.

Nor do we believe that the Association could prevail by arguing that Pan Am forfeited its right to seek remand to the Board

because of its failure to raise this issue earlier in federal court (as opposed to before the Board). First, this was not the basis for the district court's decision. Although the court criticized Pan Am for failing to raise this issue earlier in federal court, and adopted the Association's statement of facts because of Pan Am's violation of Local Rule 7.2, the court did not treat this conduct as grounds for procedural default. Instead, the court rested its holding that Pan Am could not raise this "partial defense" because it had not "raised this matter before the Board" on the premises that: (1) any change to the Award could come only from the Board; and (2) the Award "as issued" required payment without any deduction for the furlough dates in question. We agree with the former proposition, but not the latter. Indeed, it is precisely because foreclosing Pan Am from making this argument might change the Award -- by giving it an effect the Board never intended -- that we hesitate to reach such a result unnecessarily. While there may be some circumstances in which a party's conduct in court can control or alter the resolution of a matter the parties agreed to handle through arbitration, this is not such a case.

Pan Am's technical violation of Local Rule 7.2 does not provide a reason to bar Pan Am from pursuing its interpretation of the Award before the Board. We need not determine whether the factual issues regarding the furlough were adequately raised below or are properly in the record. Because we conclude that the

parties' dispute must be resolved by the Board, not the federal courts, what matters for our purposes is only the existence of the dispute, not its merits. It is therefore irrelevant whether the facts underlying the dispute are properly before us.

Although the Association suggests that Pan Am's argument that the back pay award does not include the furlough time should be considered an "affirmative defense" that Pan Am waived by not pleading it in its answer, it does not explain why. Any action to enforce an award necessarily (though often implicitly) involves the question of how that award is to be interpreted. In a dispute between two potentially plausible interpretations, there is no basis for considering one interpretation an "affirmative defense." Pan Am's "failure" to include its interpretation in its answer or as part of the discovery plan cannot justify taking away from the Board the first opportunity to interpret the Award with respect to a question the Board had not earlier confronted or anticipated. Cf. Stanton, 669 F.2d at 838 (holding that airline's conduct was "neither so shocking nor so likely to taint the workings" of the arbitration board "that somehow [it] ought to be 'estopped' from using grievance arbitration" in particular case).

For the foregoing reasons, the district court's opinion is AFFIRMED in part and REVERSED in part, and this case is REMANDED with directions that the district court remand the matter to the original arbitration panel for clarification of the Award.