**PAN AMERICAN GRAIN MANUFACTURING, INC., Plaintiff,**

v.

**CONGRESO DE UNIONES INDUSTRIALES DE P.R., Defendant.**

**Civil No. 05–1340(DRD).**

United States District Court, D. Puerto Rico.

March 28, 2008.

---

3. See Defendant's Opposition (docket No. 34) and Plaintiffs' Reply (docket No. 37).

Rafael J. Lopez–Rivera, Robles & Frias, San Juan, PR, for Plaintiff.

Ismael Rodriguez–Izquierdo, Ismael Rodriguez Izquierdo Law Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

An employer, Pan American Grain Co., hereinafter referred to a "Pan American," challenges an arbitration award entered favoring a union, Congreso de Uniones Industriales, hereinafter referred to as "Congreso,"[1] ordering the reinstatement and payment of back pay of an employee, Sergio Matias, who had been terminated allegedly because of abusive use of an unpaid absence for sickness contained in a labor contract covering the employee. Both, Pan American and Congreso are an employer and a union, respectively, within the meaning of the Labor Management Relations Act as alleged in the complaint (Ex. 1) (The union does not object that they are covered under the Labor Management Relations Act, Docket No. 1).

The court has unquestioned authority to review the arbitration award as a potential claim under Section 301 of the Labor Management Relations Act, 29 USCA § 185, hereinafter referred to as the LMRA. The court has jurisdiction both to overturn the award, albeit limited jurisdiction, as to the merits under *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) in order to potentially oversee that the arbitrator does not ignore the contract and simply does not overstep his bounds and dispenses "his own brand of industrial justice." *Kraft Foods Inc. v. Office and Professional Employees International Union,* 203 F.3d 98, 100 (1st Cir.2000). The court also has unquestionable jurisdiction to enforce collective bargaining agreements and arbitration awards. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 454, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).[2]

Our review of labor arbitration awards is, however, "extraordinarily deferential" and narrow in scope. *Kraft Foods Inc. v. Office and Professional Employees International Union,* 203 F.3d at 100 citing *Dorado Beach Hotel Corp. v. Union De Trabajadores De La Industria Gastronómica Local 610,* 959 F.2d 2, 3–4 (1st Cir.1992). The court examines the award

---

1. Both Pan Am and Congreso are an employer and a union within the meaning of LMRA as alleged in the complaint, Docket No. 1. The court takes judicial notice that in the case of *Asseo v. Pan American Grain,* 805 F.2d 23 (1st Cir.1986) a(10j) injunctive relief both the employer and the union in the instant case were covered under the LMRA.

2. The company moved to reviewing the award based on the arbitrator ignoring facts presented by the company, admissions by the employer testified by management witnesses, the arbitrator not drawing its essence [in the award] from the collective bargaining agreement (Docket No. 1).

"narrowly" and in "extraordinarily deferential" fashion as because the parties explicitly "contracted to have disputes settled by an arbitrator chosen by them, rather than by a judge; "it is the arbitrator's view of the facts and the meaning of the contract, that they have agreed to accept." *United Paperworkers Intl. Union v. Misco, Inc.* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The court is bound by "the facts as the arbitrator found them." *Kraft Foods Inc. v. Office and Professional Employees International Union,* 203 F.3d at 99 citing *Misco,* 484 U.S. at 37, 108 S.Ct. 364. However, the arbitrator's decision must "draw [ ] its essence" "from the agreement" ... a court must not disturb the award"... "[p]rovided that the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority,' 'a court may not disturb his judgment even if it is convinced he committed serious error.' " *Kraft Foods Inc. v. Office and Professional Employees International Union,* 203 F.3d at 100 citing *Misco,* 484 U.S. at 38, 108 S.Ct. 364.

■ Further, "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be a better one" *Trustees of Boston University v. Boston University Chapter American Ass. of University Professors,* 746 F.2d 924, 926, citing *Enterprise Wheel and Car Corp.,* 363 U.S. at 596, 80 S.Ct. 1358. In *Trustees of Boston University,* 746 F.2d at 926, the First Circuit court expressed that in order to overturn an award based on the arbitrator's interpretation the mover must show that the award is "unfounded in reason

and fact" "is based on reasoning" "so palpably faculty that no judge or group of judges could ever conceivably have made such a ruling" or is mistakenly based on a crucial assumption which is "conceivably a non fact." *Trustees of Boston University,* 746 F.2d at 926 citing *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1050 (1st Cir.1977), the last case quoting *Brotherhood of Railway Trainmen v. Central of Georgia Railway Company,* 415 F.2d 403 (5th Cir.1969) cert. denied 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970).

We are required to perform a "narrow" and "extraordinarily deferen[tial]" review of the arbitration award notwithstanding that we may be "convinced he [the arbitrator] committed serious error" *Misco,* 484 U.S. at 38, 108 S.Ct. 364; *Kraft,* 203 F.3d at 100. The court explains.

### THE ARBITRATION AWARD

The case is related to an employee covered by the Collective Bargaining Agreement named Sergio Matias. The award, (Docket No. 4–2), states that Mr. Matias had exhausted all of his statutory State Insurance Fund leave and when he failed to timely return he was terminated. He did not return within the statutory limits established under local law.[3] Notwithstanding, the company later altered the previously notified termination and placed him on an unpaid leave for a maximum of twenty-four months due to his injury (sickness) pursuant to Article XIV § 3 of the Collective Bargaining Agreement. (Docket No. 4–2 p. 6, Translation of Leave Article in an award.) The agreement states in Article XIV § 3(b) that "if an employee under the licence (sick leave of twenty-four

---

**3.** The employee has fifteen days after discharge from the State Insurance Fund to report to work. He also has a maximum term of twelve months from the date of the accident protected under the State Insurance Fund. 11 P.R. Laws Ann. § 7(1). (The twelve months term is a term of caducity. *Rivera–Flores v. P.R. Telephone* 64 F.3d 742 (1st Cir.1995).)

months) works for another employer, without authorization of the company, he 'may' then be ('podrá') dismissed by the company." [4]

The award begins with an analysis by arbitrator Elizabeth Guzmán Rodríguez of the Labor Department, Arbitration and Conciliation Bureau, with a disagreement as to the submission. The submission chosen by the arbitrator is not questioned. The court finds that the same "draws its essence" from the collective bargaining agreement and the facts in dispute. The submission was the following:

Determine if the instant compliant is or not procedurally subject to be arbitrated. If the same rules that it is, then determine if the dismissal of complainant Sergio Matias was justified or not. If the same is not, then apply the adequate remedy.

■ The arbitrator concluded that she had doubts as to whether the arbitration procedure was complied by the union, partly because the company unduly refused to accept delivery of documents as to the Complaint and Grievance Procedure which under the labor contract both parties use for processing complaints in the First and Second stages of the arbitration procedure. Further, the company unilaterally chose not to meet with the Union's President and failed to accept his letters as to the grievance of the employee Matias. The arbitrator concluded that afterwards the procedure to request the selection of

the arbitrator before the Bureau of Arbitration of the Labor Department was timely made by the union, noting an error in the punch clock correcting the filing date to be on June 26, 2000 instead of wrongful date of June 26 of 2001, (Docket 4–2 p. 8–11). The arbitration concluded that "doubts as to proper filing" favor the option of arbitrability quoting as authority the Steelworkers trilogy and the renowned consistently cited by federal courts work. Elkouri & Elkouri, How Arbitration Works, 5th Edition (1997), NBA page 308 (Docket 4–2 p. 13). The court finds no error, in fact, agrees with the arbitrator. The employer made no challenge in its submission as to the procedural arbitrability resolution, (Docket 15). [5]

■ The serious challenge by the company is as to the merits of the resolution of the grievance. Pursuant to the facts testified by the company witnesses which were not contradicted by any testimony from the union, the employee on sick leave, Mr. Matias, was seen working by Mr. Antonio Jacobs, Manager of Arroz Rico, an entity related to Pan American, "on his [Jacobs] way to work." Mr. Jacobs "noticed complainant performing cement mixing tasks in front of a building under construction in Loiza Avenue, Diez de Andino [section] in the Isla Verde Area." The construction site was "advertized as a project by [being constructed by] Mambi Development Inc." (Docket 4–2 p. 14.) The information was

---

4. The leave article uses the Spanish work "podrá" not "será" the first meaning "may be", the last meaning "shall be" terminated.

5. Procedural arbitration decisions belong to the arbitrator and enjoy the same traditional deference by the court as the merits of the case. "The Supreme Court has ruled that questions of procedural arbitrability are for arbitrators to decide and not for the courts." Elkouri & Elkouri, 4th Edition, NBA, p. 215 (1985) citing *John Wiley & Sons Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). However, as to substantive arbitrability that is "whether or not a party is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be entered into by the parties" is a matter to be decided by the courts. *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). See also generally *John Wiley, Id.* at 544–551, 84 S.Ct. 909, also explaining the substantive arbitration rule.

relayed to the Human Resources Director, Mr. Luis Juarbe and Mr. José González, the President of the company, all three visited the construction site during the afternoon of May 16, 2000 between 1:00 p.m. and 1:45 p.m. Juarbe and González approached the main entrance of the building being constructed, while he [Jacobs] remained at the exterior to see whether it had any other exits. **That he [Jacobs] noticed complainant [Matias] on a scaffolding performing tasks with cement over a wall inside said building.** That, when complainant noticed the presence of company officials, he proceeded to jump over the scaffolding and went running in search of an exit through the back part of the building, attempting to escape from said location ... unable to find an exit, he returned and confronted Juarbe and González ... **with the fact that the was working for another employer without due authorization** [as specifically required under the contract for sick leave, Article XIX, § 3.] (Emphasis ours.) **That complainant admitted to the officers present therein that he was working at said location because these tasks resulted easier than those he performed for the company, and because the money he was receiving from the State Insurance fund was insufficient.** (Emphasis ours.) That subsequently Mr. González stated to the complainant that "he should not return to the company, but that such a situation would be later evaluated." (Docket 4–2 p. 15–16.) (The court quoting directly from the evidence stated by company witnesses quoted by the arbitrator.)

Photographs were taken on May 16, 2000 by Jacobs. One photo was taken of the project and another "of complainant while conversing with Mr. Juarbe and González." [directly in front of the construction site as testified by the employer's witnesses.]

Jacobs "contacted the employer Mambi Development by phone for [the] purpose of verifying what he had observed ... they confirmed that complainant worked for said firm ... Jacobs took no further steps in that respect." "The union did not present any evidence." (Docket 4–2 p. 14–16.)

The arbitrator stated that the company witnesses contradicted themselves as to "the time that they appeared in [sic] at the location" ..., what complainant did upon seeing them arrive "when he was speaking with González and Jacobs." (Docket 4–2 p. 17–18).

Further, the arbitrator analyzed the photographic evidence and determined the same was inconclusive because one photograph was merely of the site and the other the complainant was not "observed in any work or physical activity." Therefore, notwithstanding the admission of the employee "it must be concluded that complainant was not performing any work whatsoever, nor that [the] same was performed for another employer."

The arbitrator concluded, not unreasonably, that evidence as to employment with Mambi was unreliable nor credible as to corroboration by the photographs. (Docket 4–2 p. 18.)

In its analysis the arbitrator provided no credibility to the company witnesses which is authorized since, notwithstanding, no other witnesses testified, he could choose not to believe the corporate witnesses. Further, he chose not to believe the circumstantial evidence as to him working at Mambi Development. Since notwithstanding, that he was seen working there by two witnesses and photographed at the site, the arbitrator was free not to believe company witnesses. The photograph where he is present merely "seems to be a lateral view of complainant ... inside what appears to be a structure un-

der construction." (Docket 4–2 p. 20.) But he is not shown "within [the Mambi] construction project." [apparent contradiction by the arbitrator]. (Docket 4–2 p. 21.) Above all, however, the company had no credible evidence directly from the alleged employer Mambi Development since the evidence as to actual employment is all hearsay. Hence, the arbitrator stressed, as he is authorized in interpreting the contract, that the evidence of Matias actually working for Mambi Development produced by Jacobs was unreliable and purely hearsay. (Jacobs phoned the company and they (Mambi) told him he was working for them.) The arbitrator discredited the circumstantial evidence produced by company witnesses of seeing him that day working at the construction site on top of a scaffolding and jumping over the scaffolding to another area looking for another exit.[6]

In the ultimate analysis the arbitrator discredited the testimony of the two corpo-

**6.** The court has a potential different solution. First, there was no union or personal animus presented to show that the company executives who testified (two of them) fabricated a case against Matias. The arbitration award is silent as to any potential union animus or personal animus relations by the witnesses against Mr. Matias. Further, prior thereto, the company modified a termination to an unpaid sick leave which in the long run is at no cost to the company. Most critical the employee failed to testify to negate the identification made of him by the two company executives and the identification made of him by the arbitrator as to one of the photographs—the arbitrator literally stated that one of the photographs "seems to be a lateral view of the complainant" at a construction site, with two other persons (the court infers Jacobs González or Juarbe) (Docket 4–2 p. 21.) Further, the arbitrator discarded the circumstantial evidence of the employee seen working at the site on two occasions on the same date. The last evidence is **not** hearsay, it is non hearsay eye witness evidence, proving by the surrounding circumstances that he was working. Further, there is no discussion whatsoever of the grievant's admission (non hearsay) that he was working at the site which constituted an easier job for him to undertake. This last matter constitutes clearly a party opponent admission which is not hearsay. Fed. R. Ev. 801(d)(2) (Admission by party opponent.) Finally, hearsay evidence, although not strong and robust is admissible evidence in labor arbitration cases and in labor management cases. Hearsay evidence was used as admissible to repossess employees under a federal labor law injunction cause of action taken by the NLRB under § 10(j), 29 USC 160(j) precisely against Pan American Grain in favor of the union, precisely Congre-so, *Mary Z. Asseo v. Pan American Grain Co.*, 805 F.2d 23, 25–26 (1st Cir.1986). Hearsay anyway is also admissible and not prohibited on arbitration cases. Elkouri & Elkouri, How Arbitration Works, Third Ed.1981 p. 2979–280. Admitted at least for "what it is worth." However, in the instant case the company complied with the "residual rule" to the hearsay of employment at Mambi allegedly admitted by Matias, expressed in the case of *Carroll v. Knickerbocker Ice Co.*, 218 N.Y. 435, 113 N.E. 507 (1916). The "residual rule" is generally followed by administrative agencies meaning that in order to provide weight to a hearsay statement there must be other "residual evidence" non hearsay evidence, on the same subject matter. The company complied. Matias was observed on two occasions on the same day working at the construction site plus he made a non hearsay admission of working at Mambi. The court was not as impressed as the arbitrator by the alleged contradictions on the testimony of the employer, first as to how each saw the claimant Matias, working on that date, the facts occurring on May 16, 2000 and the arbitration case was not seen until November 21, 2003 and February 19, 2004. The witnesses pursuant to the testimony narrated by the arbitrator testified but that they saw the defendant working at Mambi Development. Further, the hour constitutes collateral impeachment since the issue is one of **identity of the defendant** at the site and not of exact hour of when exactly he was seen as testified three and a half years later. However, our opinion is irrelevant since the court can not "disturb his [the arbitrator's] judgment even if it [the court] is convinced 'he committed serious error'." Hence, the court respects the arbitrator's judgment.

rate executives for various reasons and the arbitrator required robust evidence as to Matias actually working as an employee of Mambi. The arbitrator was thus "construing or applying the contract and acting within the scope of authority." *United Paperworkers*, 484 U.S. at 38, 108 S.Ct. 364.

As to terminating the employee who is caught "off base" working for another entity without the authority of the employer, the termination is not mandatory pursuant to express language of the contract. The contract specifically states that "he may" be terminated not that he "shall be terminated." It seem to the court, the company in retrospect "jumped the gun." They should have possessed more robust evidence of Matias working for several days with various witnesses and clear photographs, as opposed under unclear photographs, and some evidence as to the payment or payroll of Mambi Development connecting Matias as employee, all in lieu of the arbitrator's robust evidence requirement as to working at Mambi Development.

One final matter, the arbitrator's remedy is not clear since Matias is ordered repossessed at the end of the licence period under Article XIV. Since the date of repossession is unknown as well as the date of the finalization of the licence is also unknown, (remains unstated in the award), the matter is therefore far from clear.

██ Normally, the court would instinctively activate the doctrine of *functus officio*, Elkouri & Elkouri, How Arbitration Works, 325, 6th Edition 2003. However, *functus officio* in the realm of the First Circuit does not bar that "a labor arbitrator may interpret ... or amplify his award ... Functus officio notwithstanding." *Red Star Express Lines v. Int. Bhd. of Teamsters Local 170*, 809 F.2d 103, 106 (1st Cir.1987) repeated in toto recently at *Local 2322, International Brotherhood of Electric Workers v. Verizon*, 464 F.3d 93, 96 (1st Cir.2006).[7] ("In its classic form the common law doctrine of *functus officio* bars arbitrators from reconsidering or revising final awards.) (Citations missing.) This restriction was traditionally cast in jurisdictional terms ... arbitrators are thus said by some (our own case law is not clear) to be without power to 'revisit [ ] the merits of an award once it has issued' (citations missing) ... [Circuit] Judge Richard A. Posner, [of the 7th Circuit], who sums up much of what is worth saying about the doctrine, is more circumspect: he says that '[t]oday, riddled with exceptions [*functus officio* ] is hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain'." (Citations omitted.) But he did not hold it to be dead, (citations omitted), nor has this court done so. (*Verizon*, 464 F.3d at 97 citing *Red Star*, 809 F.2d at 106.)

Notwithstanding, *Verizon* at 464 F.3d at 98 makes it pellucidly clear that arbitrators discussing labor cases in interstate commerce within the jurisdiction of the First Circuit Court can "clarify" awards but "not [to] alter his original award." Hence, despite the award lacking clarity as to the scope of its remedy and the traditional functus officio doctrine, the arbitrator may clarify the award.

## CONCLUSION

Plaintiff, Pan American Grain Manufacturing Company's request to set aside the

---

7. The arbitrator is of course conscious as to the general rule the federal law "governs" "in the [enforcement] of collective bargaining agreements ... as construed by the Supreme Court in *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)." *Verizon* at 464 F.3d at 96 stating that "federal substantial law ... governs those agreements covered by the NLRB."

arbitration award is denied.[8]  The award is to be clarified by the arbitrator should the parties continue to disagree as to the scope of the remedy.

IT IS SO ORDERED.

---

8.  The court has not found any request by the     union to enforce the award.