**INTERNATIONAL WOODWORKERS OF AMERICA, U.S. AFL–CIO, and Its Local 5–15, Plaintiffs–Appellees,**

v.

**WEYERHAEUSER COMPANY, Defendant–Appellant.**

No. 92–3709.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1993.

Decided Oct. 12, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 11, 1994.*

suggestion for rehearing en banc.

Cornelius R. Heusel, New Orleans, LA, argued, for defendant-appellant.

James P. O'Connor, Little Rock, AR, argued, for plaintiffs-appellees.

Before WOLLMAN and LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

LOKEN, Circuit Judge.

Weyerhaeuser Company ("Weyerhaeuser") appeals a district court order enforcing an arbitration award issued in favor of the International Woodworkers of America and its Local 5–15 (collectively, the "Union"). We vacate the award because it did not draw its essence from the collective bargaining agreement.

## I.

The arbitration at issue arose under the single collective bargaining agreement between Weyerhaeuser and Local 5–15 covering various Weyerhaeuser facilities in Arkansas and Oklahoma (the "Agreement"). For over twenty years, Weyerhaeuser paid certain maintenance workers covered by this Agreement for their one half-hour lunch breaks because they were expected to work during lunch as the need arose. Since these employees otherwise worked an eight hour schedule, this policy assured them one half-hour of overtime pay on most work days.

On March 28, 1989, Weyerhaeuser instituted a new policy—or work schedule change, as the Company called it—giving these maintenance employees unpaid half-hour lunch breaks during which they could leave the company premises and were not expected to work. Various employees filed grievances, contending that this unilateral change in past practice was a breach of the collective bargaining agreement. Weyerhaeuser denied the grievances, and the parties proceeded to

arbitration under Article VII of the Agreement providing that, "The Arbitrator shall have no power to add to or subtract from or modify any of the terms of this Agreement."

Before the arbitrator, the Union submitted evidence that the practice of paid lunch breaks had continued over the course of numerous prior agreements. Relying upon the favorable decision of another arbitrator on a similar issue, the Union argued that the practice had become an economic benefit under the Agreement and therefore Weyerhaeuser's unilateral termination of that benefit violated its duty under Article I of the Agreement "to negotiate with the Union any changes in employee benefits that it wishes to make." Weyerhaeuser responded that its action was consistent with its prerogatives under the "Management's Rights" provisions in the Agreement and that the prior award was clearly wrong and, in any event, was not binding in this arbitration.

The arbitrator decided in favor of the Union, awarding affected employees back pay for their unpaid lunch periods from March 28, 1989, without interest. Ignoring the arguments made by the parties, the arbitrator based his decision upon Article XI, Section I, of the Agreement, which provides:

Time and one-half shall be paid for the following:

1) For all time worked in excess of forty (40) hours in any one week.

2) For all hours worked on the holidays specified in this Agreement in addition to holiday pay if so entitled.

3) For all time worked during the twenty-four (24) hour period on Sunday.

4) For all time in excess of eight (8) hours in any one day.

The arbitrator reasoned that the presence of the word "worked" in the first three clauses of Section I and its absence from clause 4 was dispositive. Invoking the principle that all words in a contract must have meaning, the arbitrator concluded:

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

[I]n this one overtime provision alone [clause 4], the hours in excess of 8 in one day are not hours that are required to be worked. Rather, any time in excess of 8 hours in one day, that the employee is required to be at the Employer's place of business, qualifies the employee for overtime pay.

Therefore, "Section I of Article XI expressly provides for overtime pay for those employees who have 'time' at the plant, at the request of the Company, in excess of 8 hours in any one day," and Weyerhaeuser must continue to pay overtime for the scheduled lunch breaks regardless of whether work is required.

Weyerhaeuser petitioned to reopen the proceedings. Noting that neither party had suggested that Article XI, Section I(4), provided a basis for resolving the dispute, Weyerhaeuser stated that it could offer "irrefutable proof" that omission of the word "worked" from that provision was a clerical error in the original 1973 collective bargaining agreement and that both parties had consistently interpreted the provision as referring only to time worked. The arbitrator refused to reopen, stating that his issuance of the award rendered him *functus officio*.[1]

The Union commenced this action seeking enforcement of the award, and Weyerhaeuser urged the district court to vacate. The district court granted summary judgment in favor of the Union, concluding that, "An arbitrator's decision, drawn from the unambiguous, and internally consistent language of a contract must receive great respect by a trial court." On appeal, Weyerhaeuser argues that the arbitrator went beyond his contractual authority, and failed to draw his award from the Agreement, when he relied upon an ambiguous provision not addressed by the parties.

## II.

We agree with the district court that the scope of judicial review of arbitration awards under collective bargaining agreements is extremely limited:

> The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on error of fact or on misinterpretation of the contract.... As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate.

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987), quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Thus, we must determine whether the arbitrator's award in this case "draws its essence from the collective bargaining agreement."

The "essence" of a collective bargaining agreement cannot always be divined by the same process that a court uses in construing a more typical commercial contract. As the Supreme Court explained in its landmark *Steelworkers Trilogy*, "The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). Therefore, "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *Id.* at 581–82, 80 S.Ct. at 1352–53.

In this case, the arbitrator based his award on Article XI, Section I(4), of the Agreement. In interpreting this provision, the arbitrator employed a purely textual analysis, relying on the absence of the word "worked" in Section I(4), its presence in Sections I(1)-(3), and the principle that each word in a contract must be given meaning. Had the parties

---

1. Under the doctrine of *functus officio*, "once an arbitrator has made and published a final award his authority is exhausted, and he ... can do nothing more in regard to the subject matter of the arbitration." *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir.1967). *See Domino Group, Inc. v. Charlie Parker Memorial Found.*, 985 F.2d 417, 420–21 (8th Cir.1993).

submitted evidence and conflicting argument as to the proper construction of this provision, we would be required to enforce this interpretation. In labor arbitration, "It is the arbitrator's construction which was bargained for." *Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362. Therefore, "an [arbitrator's] interpretation of the literal language of the disputed provision . . . obviously draws its essence from the collective bargaining agreement." *United Food & Commercial Workers, Local No. 222 v. Iowa Beef Processors, Inc.,* 683 F.2d 283, 285 (8th Cir.), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982).

But in this case the parties did not address Article XI, Section I(4), in the evidence and argument they submitted to the arbitrator. By their silence, the parties represented to the arbitrator that this provision did not afford a basis for resolving this dispute. More significantly, the absence of evidence on the question deprived the arbitrator of the "industrial common law" surrounding this part of the Agreement—its negotiating history, relevant past practices of the industry and shop, and other extrinsic indicia of the parties' intent.

Weyerhaeuser argues that the arbitrator exceeded his authority by basing his award on a provision of the Agreement not addressed by the parties. But we held to the contrary in *Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union,* 706 F.2d 228, 230–32 (8th Cir.1983) (en banc), where we upheld an award that was based upon the arbitrator's "normal interpretation" of a provision "common in collective bargaining agreements." *Lackawanna* thus establishes that the arbitrator acted within his authority in considering the entire Agreement before deciding the grievance submitted to him. The question remains, however, whether his award drew its essence from that Agreement.

We have repeatedly applied the Supreme Court's teaching that labor arbitrators must consider the parties' past practices and "the common law of the shop" in interpreting collective bargaining agreements. In *Trailways Lines, Inc. v. Trailways, Inc. Joint Council,* 807 F.2d 1416, 1423 (8th Cir.1986),

we affirmed the vacating of an award because the arbitrator had ignored the "law of the shop," had failed to discuss a relevant contract provision, and had simply copied from his decision in a previous case. In *International Union UAW v. White Motor Corp.,* 505 F.2d 1193, 1198–99 (8th Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975), we enforced an award because the arbitrator had properly considered the parties' bargaining history and prior agreements in concluding that the absence of an attachment to the collective bargaining agreement was an inadvertent omission. *See also Fairview Southdale Hosp. v. Minnesota Nurses Ass'n,* 943 F.2d 809 (8th Cir.1991) (arbitrator properly relied upon past conduct in construing ambiguous provision).

If Article XI, Section I(4), was an "unambiguous, and internally consistent" provision, as the district court concluded, we would not fault the arbitrator for applying its plain meaning to the grievance before him. But we cannot agree that this provision is unambiguous. Standing alone, Article XI, Section I(4), reads, "Time and one-half shall be paid for . . . all time in excess of eight (8) hours in any one day." There is some ambiguity in that language, but its "normal interpretation" (to borrow the key phrase in *Lackawanna*) would surely be that it is limited to "time worked"; in other words, the word "worked" would be read into the provision, *the opposite of the arbitrator's construction in this case.* When Section I(4) is compared to Sections I(1)-(3), which contain the word "worked," the significance of the omission of that word in Section I(4) becomes far more problematic. As the arbitrator implicitly recognized by invoking the all-words-must-have-meaning canon of construction, Section I(4) becomes materially ambiguous.

Under the *Steelworkers Trilogy,* such ambiguity may only be properly resolved by considering the parties' bargaining history and past practices—the "industrial common law [that] is equally a part of the bargaining agreement although not expressed in it." *Warrior & Gulf,* 363 U.S. at 581–82, 80 S.Ct. at 1352–53. Thus, when the arbitrator construed this ambiguous provision without seeking the parties' guidance as to its intent

and without evidence of their relevant past practices, he acted without considering the entire agreement. In these circumstances, we do not simply disagree with his interpretation of the Agreement; we conclude that he dispensed "his own brand of industrial justice," and his award cannot be said to "draw its essence from the collective bargaining agreement."

Accordingly, without deciding the merits of the underlying grievance, we vacate the arbitrator's award. The judgment of the district court is reversed and the case is remanded with instructions to remand to the arbitrator for such further proceedings as the collective bargaining agreement may permit. *See Misco*, 484 U.S. at 40 n. 10, 108 S.Ct. at 372 n. 10.