# United States Court of Appeals
## For the First Circuit

Nos. 06-1169, 06-1170

LOCAL 2322, INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,

Plaintiff, Appellant/Cross-Appellee,

v.

VERIZON NEW ENGLAND, INC.,

Defendant, Appellee/Cross-Appellant.


APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]


Before

Boudin, Chief Judge,
Lynch, Circuit Judge,
and Schwarzer,[*] Senior District Judge.


Alfred Gordon with whom Harold L. Lichten and Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C. were on brief for plaintiff, appellant/cross-appellee.

James W. Bucking with whom Alicia Alonso Matos and Foley Hoag LLP were on brief for defendant, appellee/cross-appellant.


September 28, 2006

[*]Of the Northern District of California, sitting by designation.

**BOUDIN**, **Chief Judge**. Thomas Ouellette, a Verizon employee, took the day off on December 2, 2002, to attend the funeral of his wife's grandfather and was disciplined. This in turn led to arbitration and to the present appeal, which presents a procedural issue of some importance. The events following Ouellette's December 2 day away from work can be briefly summarized.

Because Verizon considered the absence to be unauthorized, it suspended Ouellette for three days. Pursuant to the collective bargaining agreement between Verizon and Local 2322 of the International Brotherhood of Electrical Workers ("the union"), the union filed a grievance. Verizon reduced the discipline to a one-day suspension, designating December 3 as an unpaid day of suspension. Still unsatisfied, the union demanded arbitration.

The parties submitted to the arbitrator the question, "Was the one-day suspension given to Thomas Ouellette for just cause? If not, what shall be the remedy?" On June 4, 2004, the arbitrator issued a decision ("the June award") which attributed some blame both to Ouellette and his supervisor and concluded:

> The one day suspension given to Thomas Ouellette was not for just cause. The day shall be converted to leave without pay and the discipline removed from his file.

Verizon then altered its records for December 3, 2002, from "suspension" to "unpaid absence" and deleted any reference to

-2-

discipline. Verizon left unchanged the "unauthorized absence" marked on Ouellette's attendance record for December 2.

The union interpreted the June award as ordering Verizon both to pay Ouellette for December 3 and to strike the "unauthorized" reference from Ouellette's attendance record for December 2 (although the union did not claim that he should be paid for December 2). When Verizon disagreed, the union on June 24, 2004, wrote to the arbitrator with a copy to Verizon's counsel, seeking clarification of the award. Its letter said:

> It seems absolutely clear that the "day" which you hold should be "converted to leave without pay" is the day that Mr. Ouellette attended the funeral. The second additional day for which he was suspended and not paid, is obviously covered by that part of your award that says "the one day suspension . . . was not for just cause." As such, Mr. Ouellette is clearly entitled to pay for that day.

Verizon responded by saying that the award was not ambiguous; that "[t]he day" that the arbitrator had directed in the second sentence of the award be converted to "leave without pay" was self-evidently the same day ("the one day suspension") referred to in the first sentence; and that the arbitrator had no power to alter his earlier award. In a conference call with the parties on August 10, 2004, the arbitrator said that he had intended to award Ouellette back pay for December 3.

On August 16, 2004, the arbitrator issued a letter purporting to clarify his award ("the August letter"):

> The one day suspension give[n] to Thomas Ouellette was not for just cause. He shall be made whole for all lost wages and benefits arising from this suspension and the discipline shall be removed from his file.
>
> The day of the funeral shall be treated as [a] day of leave without pay.

Verizon neither complied with this "make whole" directive nor did it seek review in court. In November 2004, the union sued Verizon in federal district court under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (2000). That statute provides federal courts with authority to enforce collective bargaining agreements and, as construed by the Supreme Court in Textile Workers v. Lincoln Mills, 353 U.S. 448, 451 (1957), invokes federal substantive law to govern those agreements.

In its motion for summary judgment, the union argued for enforcement of the back pay directive. In its cross motion Verizon answered that the August letter was not a proper award but an illegitimate alteration of the original June award. The union replied that Verizon forfeited its "alteration" defense because it had not brought suit to set aside either the June award or the August letter.

The district court granted summary judgment in favor of the union, requiring that back pay be awarded to Ouellette for December 3, 2002. It did not concern itself with the union's forfeiture argument, because it found that in any event the August letter was merely a permissible clarification of the original

-4-

award. However, the court refused the union's request for attorneys' fees, saying that Verizon's position was not frivolous but merely unpersuasive.

Both sides have appealed. Verizon claims that the August letter was an alteration of the award and beyond the arbitrator's authority. The union says that Verizon forfeited this defense and that in any case the August letter is a clarification that the arbitrator could permissibly make. Given the forfeiture, the union says that Verizon should pay the union's attorneys' fees for the district-court enforcement proceeding.

We begin with the forfeiture issue. This is not an objection, like Article III or subject matter jurisdiction, that has to be addressed at the threshold; the district court was free to bypass the issue and decide the case on the merits. But for the sake of future litigants, the ground rules ought to be clarified as far as possible, so that in similar circumstances the parties to arbitrations know who is to appeal.

To understand the forfeiture issue, one must take several steps back. Where a collective bargaining agreement includes an arbitration clause, the arbitration award is treated as a contractual obligation that can be enforced through a section 301 suit. Lincoln Mills, 353 U.S. at 451. But this leaves unanswered a host of questions concerning the powers of arbitrators and the mechanics of judicial review of labor arbitration awards.

-5-

To resolve such issues, federal courts could conceivably borrow from the Federal Arbitration Act ("FAA"), which does not apply of its own force, 9 U.S.C. § 1 (2000); or they could create a common law of labor arbitration; or they could borrow from analogous state law. The practice has developed in labor arbitration cases of borrowing the forum state's law to fix the limitations period for seeking judicial review of an arbitration decision. Posadas de Puerto Rico Assoc. v. Asociacion de Empleados de Casino de Puerto Rico, 873 F.2d 479, 483 (1st Cir. 1989).

Consonantly, federal courts have adopted the general rule that "[a] party who fails to initiate an action to vacate or modify an award" within the applicable state time limit--thirty days in Massachusetts, Mass. Gen. Laws ch. 150C § 11(b) (2004)--"is barred from asserting those claims as defenses to a later action to confirm." Derwin v. General Dynamics Corp., 719 F.2d 484, 489 (1st Cir. 1983). This rule serves "to cut off stale defenses[, ] to encourage parties to forego merely formal judicial proceedings aimed at obtaining confirmatory orders," and to advance "the federal policy of according finality to labor awards." Id. at 490.

Such a rule is easily enough administered where there is only one pronouncement by the arbitrator and where it is clear from the outset who has won and who has lost. But here Verizon could hardly be expected to seek review of the June award within 30 days of its issuance; the award did not mention back pay, and the first

clear statement that the arbitrator wanted Verizon to provide back pay came only in August. However, by or shortly after August 16, 2004, Verizon did have such notice in definitive form.

Yet Verizon then failed to bring suit to challenge either the allegedly clarified June award or the explicit August letter. Verizon says that it had no obligation to sue because the original award was in Verizon's favor, and that the August letter was ineffective to alter the award under the doctrine of functus officio. It concludes that it is free now to raise this objection as a defense in the union's suit to enforce the award.

In its classic form, the common law doctrine of functus officio bars arbitrators from reconsidering or revising final awards. Glass Molders, Pottery, Plastics & Allied Workers Int'l Union v. Excelsior Foundry Co., 56 F.3d 844, 845 (7th Cir. 1995). This restriction was traditionally cast in jurisdictional terms. As commentators have explained, "[A]n arbitrator's jurisdiction ends when a final award is issued." Elkouri & Elkouri, How Arbitration Works 325 (6th ed. 2003). Arbitrators are thus said by some (our own case law is not so clear) to be without power to "revisit[] the merits of an award once it has issued." Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp., 186 F.3d 326, 331 (3d Cir. 1999).

The current vitality of the doctrine is disputed by the union, which says that it is "long dead" in labor arbitration.

-7-

Judge Posner, who sums up much of what is worth saying about the doctrine, is more circumspect: he says that "[t]oday, riddled with exceptions, [functus officio] is hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain," Excelsior, 56 F.3d at 846. But he did not hold it to be dead in Excelsior, id. at 848, nor has this court done so. Red Star Express Lines v. Int'l Bhd. of Teamsters, Local 170, 809 F.2d 103, 106 (1st Cir. 1987).

After an arbitrator issues an award, various questions can arise as to his subsequent authority: notably, whether he has power to clarify an award, to alter or undo it, to fill in details not addressed, or to suspend it while any of these other steps are being considered; how long these powers continue (if they exist); and how they interact with the judicial review process. Even if one abolished the functus officio doctrine, such problems would remain for the courts to resolve (absent agreement by the parties).

In this circuit, the question whether and when an arbitrator may reverse or substantially alter his ruling is perhaps an open one; we have not needed to resolve the issue. See Red Star, 809 F.2d at 106; Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273, 279 (1st Cir. 1983). But we have decided that "a labor arbitrator may . . . interpret or amplify his award, functus officio notwithstanding." Red Star, 809 F.2d at 106 (quoting Courier-Citizen, 702 F.2d at 278-80).

-8-

It might seem natural to extend the authority to clarify (per Red Star) to allow as well an arbitrator to alter an award on rehearing, were it not for the lack of time limits and clear standards as to the grounds for such action. (By contrast, in federal courts, Fed. R. Civ. P. 59 and 60 provide a carefully calibrated set of rules for whether a court may alter or undo a previously entered judgment). Also, in arbitrations, the uncertainty as to finality caused by clarification requests would be magnified if outright alterations of a prior award were also permitted.

It is enough in this instance that, as permitted by Red Star, the union promptly sought clarification of the June award. In turn, the August letter was unequivocally adverse to Verizon on the back pay issue. In our view, Verizon was then obligated to seek judicial review of the August letter if it wanted to argue that the August letter was an impermissible change in the original award rather than a reasonable clarification. There may be limits to this obligation--suppose Verizon was never a party to an arbitration agreement but finds an award entered against it--but that is not this case.

Verizon protests that if (as it believes) the June award was altered in August rather than merely clarified, then--on Verizon's premise that the arbitrator had no power to alter an award--the original June award remained effective (favoring Verizon

on the back pay issue); the August modification was a "nullity" as beyond the arbitrator's power; and Verizon had no obligation to do anything to preserve its right to defend against enforcement on that ground.

The pivot point of this argument is the claim of nullity --the implied connotation being that nothing happened of legal significance and that Verizon therefore needed to do nothing to preserve its position. Lawyers like to argue from abstractions like "nullity" or "jurisdiction," but they are rarely self-executing,[1] and it is perilous to ignore pertinent policy and the actual consequences of one course as compared with another.

Here, we hold that--even assuming arguendo (as we do) that the arbitrator could only "clarify" and not "alter" his original award--Verizon was compelled to seek review once it became clear that the clarification was adverse to Verizon. There may be exceptions--for example, if Verizon showed that court review was no longer available or perhaps if it had never been a party to the arbitration--but such issues can be considered if and when they arise. Our reasons for our holding are as follows.

---

[1]"But to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?" SEC v. Chenery Corp., 318 U.S. 80, 85-86 (1943)(Frankfurter, J.).

In arbitration, and not just labor arbitration, it is common to require the losing party to seek review or be foreclosed from objecting to an award.[2] A major reason is that policy favors swiftness of resolution--one of the main attractions of arbitration, see Posadas de Puerto Rico, 873 F.2d at 483--and forcing the objecting party to sue within the time allowed serves this interest. The objecting party would otherwise have an incentive to sit on its hands until the favored party brings a confirmation action, delaying for as long as possible the implementation of the award.

Several other circuits are generally in accord with the approach we take, although they address a variety of different kinds of objections. See, e.g., Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 88-89 (2d Cir. 1998) (objection to arbitrator's jurisdiction); Teamsters Local No. 579 v. B & M Transit, Inc., 882 F.2d 274, 276-77 (7th Cir. 1989) (same); Prof'l Adm'rs Ltd. v. Kopper-Glo Fuel, Inc., 819 F.2d 639, 642 (6th Cir. 1987) (claims should not have been submitted to arbitration); Int'l Bhd. of Elec. Workers, Local Union

_____

[2]The FAA, for example, provides that the court must grant confirmation of an arbitral award unless the award is vacated, modified or corrected on motion of one of the parties. 9 U.S.C. §§ 9-10. See also Mass. Gen. Laws ch. 150C § 10 ("Upon application of a party, the superior court shall confirm an award, unless within the time limits, hereinafter imposed grounds are urged for vacating, modifying or correcting the award . . .").

No. 969 v. <u>Babcock & Wilcox</u>, 826 F.2d 962, 965-66 (10th Cir. 1987) (grievance committee lacked jurisdiction to decide dispute).

By contrast, in <u>Domino Group, Inc.</u> v. <u>Charlie Parker Mem'l Found.</u>, 985 F.2d 417 (8th Cir. 1993), the Eighth Circuit did allow an arbitrator's alleged alteration of an award to be challenged in a later enforcement action even though the objecting party had not sought direct review of the decision containing the alteration. It is not clear from the opinion whether this opportunity was a holding or simply an unchallenged assumption.

But <u>Domino Group</u> was complicated by a further wrinkle: the court viewed the arbitrator's action as also precluded by an earlier remand order from a reviewing court. <u>Domino Group</u>, 985 F.2d at 420. In all events, the court did not explain its reasons for allowing the "alteration" claim to be raised as a defense; if it intended to adopt a general rule favoring that course, we read the decision with respect but decline to follow it.

Admittedly, where an alleged clarification is sought, whether it is denied or granted, problems may arise as to the time period within which review must be sought, including questions of tolling and accrual. Because Verizon never sought review at all, we need not address them in this case. If (improbably) such rules operated so as to deprive a party of a reasonable opportunity to seek review of an adverse clarification, that would be the time to argue that in such unusual circumstances "alteration" should be

-12-

allowed as a defense to an enforcement action.  Cf. Fradella v. Petricca, 183 F.3d 17, 20-21 & n.4 (1st Cir. 1999).

Although Verizon forfeited its functus officio defense, a brief word about "the merits"--whether the August letter was a reasonable clarification rather than an alteration--is warranted. Specifically, if Verizon's position on the merits were completely unreasonable, this might itself be an adequate basis for an award of attorneys' fees against it.  Conversely, if the union's position made no sense whatever, we might consider whether our ruling on the forfeiture issue should be made prospective only to avoid any unfairness to Verizon.

In fact, each side has possible arguments on the merits. The June award said nothing about back pay and might have seemed to negate back pay for December 3 by referring to that day in the first sentence ("The one-day suspension . . . was not for just cause.") and then saying: "The day shall be converted to leave without pay and the discipline removed from his file."  But a closer reading suggests that while the first sentence clearly referred to December 3, the second could easily have referred to December 2--the day of the funeral.

Specifically, for December 2 it made sense to say in the second sentence that Ouellette should be unpaid ("leave without pay") since he did not work but should not be regarded as seriously at fault ("the discipline removed from his file").  And, while the

-13-

first sentence of the June award did not <u>order</u> that back pay should be provided for December 3, this could be viewed as a natural and intended consequence of the ruling that the suspension for that day was "not for just cause."

On the other hand, the union's demand for arbitration requested both that the suspension be rescinded and that Ouellette be made whole; the June award said nothing about the latter and, given the arbitrator's view that both Ouellette and his supervisor were somewhat at fault, a compromise remedy could have been intended: no disciplinary black mark but also no pay for December 3. The line between clarification and alteration can be, and here was, a reasonably disputable issue.

Indeed, cases will often lie somewhere along a spectrum between patent alteration and plainly reasonable clarification, depending not only on the facts but also the precise meanings one could choose to give to fairly general terms like "alter" and "clarify." This is a further reason in support of our view that Verizon had to appeal. The question who <u>ought</u> to appeal should depend on an easily discernable fact and not on a distinction that can only be drawn definitively after the merits have been considered.

One might ask whether our holding that Verizon has forfeited its alteration claim should be applied only prospectively, but we think this has the question backwards. To us

the baseline rule is that in arbitration the dissatisfied party must ordinarily seek review and is barred from reserving objections to the arbitrator's decision until enforcement is sought. Derwin, 719 F.2d at 489. In this case, we see no unfairness in applying this baseline rule to Verizon.

As for attorneys' fees, they were rightly denied by the district court. Under federal common law, a court may award fees and costs to the winning party in a section 301 action if the losing party's position was "frivolous, unreasonable, or without foundation."[3] Ordinarily, the test on review is whether a grant or denial constitutes a "manifest abuse of discretion." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292 (1st Cir. 2001).

Verizon's main position--that the clarification was an alteration--was at least colorable and not frivolous (after all, the June award did not say that back pay was ordered). Similarly, whether a "true" alteration by an arbitrator is impermissible may well be a debatable issue in this circuit. It was not unreasonable for Verizon to urge that to this extent the functus officio doctrine is still good law.

The union argues at least for a remand, saying that the district court erred as a matter of law in failing to consider its

---

[3]Local 285, Serv. Employees Int'l Union AFL-CIO v. Nonotuck Resource Assoc., Inc., 64 F.3d 735, 737 (1st Cir. 1995) (quoting Washington Hosp. Ctr. v. Serv. Employees Int'l Union, 746 F.2d 1503, 1510 (D.C. Cir. 1984)).

-15-

main argument for legal fees, namely, that Verizon had forfeited its defense and so should not have litigated the case at all.  But Verizon had support from at least one circuit (the Domino Group case) in thinking that it could reserve its alteration claim as a defense, and it was not frivolous to urge a similar approach in this court.

Affirmed.