# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3116

_____

Linda L. Turner,

      Plaintiff - Appellee,

v.

United Steelworkers of America,
Local 812, et al.,

      Defendants - Appellants.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.
\*
\*
\*
\*

_____

Submitted: April 14, 2009
Filed: September 11, 2009

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and ROSENBAUM,\* District Judge.

_____

LOKEN, Chief Judge.

What began as a routine arbitration of an employee grievance under the collective bargaining agreement ("CBA") between Eagle-Picher Technologies and Local 812 of the United Steelworkers of America (the "Union") evolved into an unusual lawsuit by the employee, Linda Turner, against the Union, seeking to confirm a portion of the arbitrator's back pay award allegedly imposed against the Union, rather than Eagle-Picher. The district court granted Turner's motion for summary

_____

\*The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

judgment. The Union appeals. Reviewing the district court's interpretation of the arbitration award *de novo*, we reverse and remand with directions to enter an amended judgment eliminating the award of back pay against the Union. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-49 (1995) (standard of review).

Eagle-Picher terminated Turner in January 2005. Article 5 of the CBA authorized a committee designated by the Union to initiate a three-step grievance procedure to resolve "a grievance . . . over the application or interpretation of any provision of this contract." The Union filed a grievance contesting Turner's discharge. Step 4 of Article 5 provided that, if the grievance was not resolved at Step 3, "the matter may be submitted to arbitration on demand of the Union within thirty (30) calendar days." When Turner's grievance was not resolved in late February, the Union demanded arbitration on Turner's behalf, but it delayed making the demand until September. Accordingly, in addition to defending Turner's discharge on the merits, Eagle-Picher argued that the matter was not "procedurally arbitrable."

After a hearing, the arbitrator ruled that the matter was arbitrable because Eagle-Picher had not timely raised its procedural objection. The arbitrator sustained the grievance, concluding that a thirty-day suspension was "the extent of disciplinary action supported." However, the opinion explained, Eagle-Picher's back pay obligation would be limited because "the lengthy delay in moving the proceedings to arbitration . . . [was] not the fault of the Employer." The opinion concluded with the following operative provision (hereinafter referred to as "the Award"):

**AWARD**

The grievance is sustained. [Turner] shall be reinstated. The discipline shall be reduced to a thirty day suspension without pay. [Turner] shall be made whole by [Eagle-Picher] with respect to her seniority and benefits but *[Eagle-Picher] shall only be required to pay back pay from September 10, 2005 to the date she is reinstated. The Union shall be*

-2-

*responsible for the back pay from January 21, 2005 through and including September 9, 2005.*

(Emphasis added.) Eagle-Picher paid Turner the required back pay. The Union refused to pay more. Neither Eagle-Picher nor the Union sought to vacate, modify, or clarify the Award.

Seventeen months later, Turner filed a Petition for Confirmation of Arbitral Award against the Union in Missouri state court. See Mo. Rev. Stat. § 435.400. The Petition sought a money judgment of $21,734.40 plus prejudgment interest, Turner's calculation of back pay owing for the period January 21 through September 9, 2005. The Union removed the claim as completely preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1] Turner moved for summary judgment "in the amount of $21,723.40 plus interest to the date of judgment, currently $3,569.46." The district court granted that motion and denied the Union's cross motion for summary judgment, concluding that (i) Turner has standing to seek confirmation of the Award, (ii) the Union waived defenses to confirmation by failing to file a timely petition to vacate or modify the Award, and (iii) there was "little ambiguity" in the arbitrator's statement that "the Union shall be responsible" for the claimed portion of the total back pay awarded. We take up these issues in turn.

**1. Standing.** Section 301 "contemplates suits by and against individual employees . . . to vindicate uniquely personal rights . . . such as wages, hours, overtime pay, and wrongful discharge." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976) (quotation omitted). However, under the grievance and

---

[1]Section 301 provides as relevant here: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

arbitration procedures in most CBAs, the union serves as the grieving employee's exclusive representative in the settlement of covered disputes with the employer, such as an alleged wrongful termination. Those procedures "are . . . enforced under § 301." Id. In such cases, an employee may not sue to enforce an arbitration award *against her employer* absent a showing that the union breached its duty of fair representation to the employee by failing to enforce the award. See Vaca v. Sipes, 386 U.S. 171, 177 (1967). This is called a "hybrid § 301/fair representation claim." Livingstone v. Schnuck Market, Inc., 950 F.2d 579, 582 (8th Cir. 1991).

As Turner has not alleged a breach of the Union's duty of fair representation, the Union argues she has no standing to enforce the arbitration Award. But this case presents an unusual situation. Turner is suing the Union for failing to pay *its* alleged obligation under the Award, not for failing to represent Turner in collecting from Eagle-Picher. If we assume, hypothetically, that a CBA expressly contemplates arbitration awards against the union, *and* provides for separate representation of the employee when such claims are asserted, no congressional policy underlying § 301 would be compromised by allowing an employee to sue the union for breach of contract (refusal to pay an award) without first showing a breach of the duty of fair representation. As the court said in O'Hara v. District No. 1-PCD, 56 F.3d 1514, 1520-21 (D.C. Cir. 1995), "When the employee alleges that the union itself has breached an obligation to the employee under the [CBA], the policy reasons for requiring a violation of the duty of fair representation in the hybrid suits no longer apply. Proof of the contractual violation alone should suffice." Thus, like the district court, we conclude that Turner has standing to assert this claim. Cf. Brown v. Sterling Alum. Prods. Corp., 365 F.2d 651, 656-57 (8th Cir. 1966).

**2. Waiver of Defenses.** Though judicial review of an arbitrator's award under § 301 is highly deferential, an award may not be confirmed unless it "draws its essence from the collective bargaining agreement." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987), quoting United Steelworkers of Am. v.

-4-

Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). Applying that principle, the Union argues that the award of back pay against the Union may not be confirmed because (i) the CBA authorized only the arbitration of grievances against the employer, Eagle-Picher, not the Union; (ii) the CBA provided the arbitrator with discretion to impose or modify remedies only against "the Company"; and (iii) the parties submitted to the arbitrator only the question whether Eagle-Picher violated the CBA by discharging Turner without just cause.

The district court declined to consider these issues because the Union failed to seek to have the Award vacated, modified, or corrected. We agree. A suit to vacate an award under § 301 is subject to the applicable state statute of limitations. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 60-64 (1981). Under Missouri law, a suit to vacate an arbitration award must be filed within ninety days, Mo. Rev. Stat. § 435.405.2, whereas a suit to confirm the award is subject to Missouri's five-year statute of limitations for breach of contract actions, Mo. Rev. Stat. § 516.120. "The failure to file a timely motion to vacate an award . . . typically bars a party from later raising any defenses to the confirmation of the award that could have been raised in the vacation motion." Sheet Metal Workers Int'l Ass'n, Local Union No. 36 v. Systemaire, Inc., 241 F.3d 972, 975 (8th Cir. 2001). This principle "is intended to enhance the speed and effectiveness of arbitration, to provide fair review of the arbitrator's decision, and to preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award." Teamsters Local, No. 579 v. B&M Transit, Inc., 882 F.2d 274, 277 (7th Cir. 1989). As such, it is "fully consistent with the federal policy of according finality to labor awards." Derwin v. General Dynamics Corp., 719 F.2d 484, 490 (1st Cir. 1983); accord Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998).[2]

---

[2]The same principles apply to actions to vacate and confirm awards made under the Federal Arbitration Act. See 9 U.S.C. §§ 9-10; Domino Group, Inc. v. Charlie Parker Mem'l Found., 985 F.2d 417, 419-20 (8th Cir. 1993).

Here, the Union argues that it should not be barred from asserting these defenses because it reasonably construed the award as not obligating it to pay any portion of the back pay and did not know Turner would take a contrary position until after the statute of limitations for challenging the award had expired. The Union's position is not unlike the employer's contention in Local Union No. 36, Sheet Metal Workers' Int'l v. Atlas Air Cond. Co., 926 F.2d 770, 772 (8th Cir. 1991), where we held that an employer waived its defense to the arbitrator's jurisdiction by not suing to vacate the award. The argument might have force if the defendant in the suit to confirm was not a party to the arbitration, or if the petitioner sought to "confirm" a remedy not mentioned in the award. See Local 2322, IBEW v. Verizon New England, Inc., 464 F.3d 93, 97-98 (1st Cir. 2006). But as the First Circuit emphasized in Local 2322, id. at 98-99, the waiver principle should otherwise be strictly enforced to further the federal policy favoring prompt resolution of collective bargaining disputes. Here, the Union was a party to the arbitration, and the Award by its plain language arguably imposed a partial back pay obligation directly on the Union. In these circumstances, the Union should have sought clarification by the arbitrator, or sued to vacate that part of the Award. By failing to do so, the Union waived its defenses to confirmation.

**3. Interpreting the Award.** With the Union's defenses waived, Turner is entitled to a judgment confirming the Award and to enforcement of that judgment. Domino Group, 985 F.2d at 420. The district court saw "little ambiguity" in granting Turner a money judgment for back pay during the period the arbitrator declared the Union "*responsible* for the back pay." We conclude the issue is not so simple. By *requiring* Eagle-Picher to pay back pay, the Award plainly imposed a liability. But the word "responsible" assigned blame to the Union without *necessarily* imposing liability. The paragraph preceding the Award suggested that, whatever the Union's responsibility for part of Turner's loss, the Award was limited to Eagle-Picher's back pay obligation: "I am only ordering that the Employer pay back pay . . . ."

A potentially threshold question is whether to direct the district court to remand to the arbitrator for clarification of an ambiguous Award. Without question, a reviewing court may ask the arbitrator to clarify an award. See Int'l Woodworkers of Am. v. Weyerhaeuser Co., 7 F.3d 133, 137 (8th Cir. 1993); AFSCME, Local Lodge No. 1803 v. Walker County Med. Ctr., Inc., 715 F.2d 1517, 1519 (11th Cir. 1983); McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, 686 F.2d 731, 734 n.1 (9th Cir. 1982); cf. Local 2322, 464 F.3d at 98. However, we agree with the Seventh Circuit that the remand procedure should be sparingly employed in labor arbitration cases, "given the interest in prompt and final arbitration." Ethyl Corp. v. United Steelworkers of Am., 768 F.2d 180, 188 (7th Cir. 1985). Therefore, we will first determine whether we can discern the arbitrator's clear meaning. Like the question whether a contract is ambiguous, this is an issue we review *de novo*.

We must construe the arbitrator's Award in the context of the CBA she was interpreting and the specific dispute submitted by Eagle-Picher and the Union. The CBA provided that the Union *may* submit unresolved grievances against the employer to an arbitration in which the Union represented the interest of the grieving employee. Nothing in Article 5 suggested that claims could be asserted against or liability imposed upon the Union in the arbitration of a grievance against the employer.[3] The arbitrator defined the issues submitted as "1) Is this matter procedurally arbitrable? 2) If so, was the Grievant terminated for just casue and if not what is the appropriate remedy?" Nothing in this statement suggests that the arbitrator believed the parties submitted a remedial claim against the Union. See Safeway, 889 F.2d at 950 (McKay, J., dissenting) ("an arbitration submission, clearly framed in terms of employer's breach [of the CBA] . . . . [should not be construed as] requiring the union to defend

---

[3]In this regard, Article 5 is distinguishable from the CBA at issue in United Food & Comm. Workers, Local Union No. 7R v. Safeway Stores, Inc., 889 F.2d 940, 947 (10th Cir. 1989) , which imposed a duty on the union to request arbitration "with reasonable promptness," a duty that appears to authorize the arbitrator to award a remedy against the union, if that issue is properly submitted.

itself against its client while at the same time requiring it to give that client fair representation").

We also construe the Award in the broader context of labor arbitration. In affirming the vacating of an award that expressly ordered the union to reimburse the employer for part of its back pay obligation, the Seventh Circuit explained:

> Not only does the [CBA] strongly imply that the arbitrator could not impose the reimbursement remedy . . . we think it is clearly implausible to suppose the parties [to the CBA] ever contemplated that remedy. . . . [B]y agreeing to allow the type of remedy imposed here, the union would have created the potential for conflicts between its own interests and its duty to fairly represent its employees. . . . If the union had known that it might be liable for the amount of [the employee's] back pay, the temptation would have existed for the union to give short shrift to [his] grievance or to defend itself at [his] expense, since if [he] was not entitled to back pay, the union could not be liable.

Carpenter Local No. 1027 v. Lee Lumber & Building Material Corp., 2 F.3d 796, 799 (7th Cir. 1993). We assume that the arbitrator was aware of these concerns and would know that a serious conflict of interest might result from imposing a direct monetary obligation on the Union that represented the grieving employee unless the parties' submission gave clear notice that such a remedy was at issue.

Finally, we find it significant that the submitted issue of procedural arbitrability gave the arbitrator an independent reason to focus on the Union's fault. Eagle-Picher argued it should have no wrongful discharge liability because the Union's arbitration demand was untimely under Article 5. The arbitrator rejected that complete defense but explained that the employer was not being assessed a back pay obligation for the period when the Union's delay made it "responsible" for any injury to Turner.

For the foregoing reasons, we conclude that, in labeling the Union "responsible for the back pay from January 21, 2005 through and including September 9, 2005," the arbitrator did not intend to award back pay against the Union for that period. Accordingly, although Turner was entitled to a judgment confirming the Award, the district court judgment "in the amount of $21,723.40 plus interest" must be reversed. The judgment of the district court is reversed and the case is remanded with directions to enter an amended judgment not inconsistent with this opinion.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in all of the court's opinion except for point 2 concerning waiver of defenses, which I view as unnecessary to the decision in light of the conclusion reached in point 3.

_____